People v Andujar (2018 NY Slip Op 08028)





People v Andujar


2018 NY Slip Op 08028


Decided on November 21, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 21, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
JOSEPH J. MALTESE
BETSY BARROS
LINDA CHRISTOPHER, JJ.


2014-08198
 (Ind. No. 1175/13)

[*1]The People of the State of New York, respondent,
v
Jonathan W. Andujar, appellant.


The Legal Aid Society, New York, NY (Svetlana M. Kornfeind and Scott D. Thomson of counsel), for appellant.
Richard A. Brown, District Attorney, Kew Gardens, NY (John M. Castellano, Johnnette Traill, Joseph N. Ferdenzi, Nancy Fitzpatrick Talcott, and Sharon Y. Brodt of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Michael Aloise, J.), rendered July 24, 2014, convicting him of manslaughter in the first degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is reversed, on the facts, the indictment is dismissed, and the matter is remitted to the Supreme Court, Queens County, for further proceedings consistent with CPL 160.50.
On July 9, 2005, at about 4:30 a.m., Michael Geroulakis and Dimitri Zisimopoulos were stabbed after an altercation with two men. Zisimopoulos died as a result of his stab wound. In 2006, the defendant, and codefendants Angel Class and Juan Gonzalez, were each charged under an acting-in-concert theory with murder in the second degree as to Zisimopoulos, assault in the second degree as to Geroulakis, and two counts each of criminal possession of a weapon. Manslaughter in the first degree was submitted to the jury as a lesser included offense of murder in the second degree. After a trial in 2009, the jury acquitted the defendant and the codefendants of murder in the second degree. Class was convicted of manslaughter in the first degree, assault in the second degree, and criminal possession of a weapon in the fourth degree. The defendant was convicted of manslaughter in the first degree, but acquitted of assault in the second degree and both counts of criminal possession of a weapon. Gonzalez was acquitted of all of the charges.
On the defendant's appeal, this Court reversed his conviction and dismissed the indictment against him on the ground that the trial court violated his right of confrontation (see People v Andujar, 105 AD3d 756), without prejudice to the People to re-present any appropriate charges to another grand jury (see People v Gonzalez, 61 NY2d 633, 634-635). In 2013, the defendant was indicted on a single count of manslaughter in the first degree that charged him with acting in concert to cause the death of Zisimopoulos by "stabbing him about the body." After the second trial, in which the jury heard the testimony of the sole eyewitness, Geroulakis, as to the stabbing, the defendant was convicted of manslaughter in the first degree. The defendant appeals. We reverse on the ground that the jury's verdict was against the weight of the evidence.
"[W]eight of the evidence review requires a court first to determine whether an acquittal would not have been unreasonable. If so, the court must weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions. Based on the weight of the credible evidence, the court then decides whether the jury was justified in finding the defendant guilty beyond a reasonable doubt" (People v Danielson, 9 NY3d 342, 348; People v Bleakley 69 NY2d 490). "Essentially, the court sits as a thirteenth juror and decides which facts were proven at trial" (People v Danielson, 9 NY3d at 348).
Here, an acquittal would not have been unreasonable based on the testimony of Geroulakis, who was the sole eyewitness, several police detectives who interviewed Geroulakis, and certain documentary evidence. Geroulakis testified at both the first and the second trials. At the second trial, Geroulakis testified that after a night of drinking at various bars, he and Zisimopoulos went to a stand to purchase souvlaki sandwiches. After eating his souvlaki, Zisimopoulos threw the souvlaki stick into the air, and the stick struck a young woman. Two young hispanic men, who appeared to be friends of the young woman, approached Geroulakis and Zisimopoulos. One of the young men was short, and the other was tall. The shorter man got into a cursing match with Geroulakis. Thereafter, Geroulakis and Zisimopoulos got into a car with friends, who then drove Geroulakis to his own car. As Geroulakis was exiting his friends' car, two cars pulled up and five young hispanic men got out. Geroulakis recognized two of the men who confronted him as the men from the souvlaki stand. Geroulakis and the shorter man began shoving each other, and the shorter man stabbed Geroulakis in the leg. The defendant and the shorter man then reached into the backseat of the car with blades in their hands. Zisimopoulos, who was seated in the middle seat, sustained a single stab wound to the abdomen, from which he died the next day. Two months after the incident, after a precinct lineup on September 14, 2005, Geroulakis identified the defendant as the "guy who stabbed Jimmy."
On cross-examination, Geroulakis's testimony was incredible and unreliable. Geroulakis denied that, at the first trial, he had identified the defendant as the shorter man at the souvlaki stand. When Geroulakis was confronted with his testimony from the first trial, he responded, "I remember they told me who is who, who stabbed me and who stabbed Jimmy." Significantly, investigating detective Robert W. Henning testified that Geroulakis told him that he had argued with the shorter man, that they pushed and shoved each other, that the man "pulled out a knife" and stabbed Geroulakis "in the right thigh area" and then walked over to the car, reached in, and "stabbed [Zisimopoulos] in the abdomen." After reading his interview notes, Henning confirmed that Geroulakis stated that the same person stabbed both Geroulakis and Zisimopoulos. Furthermore, on cross-examination, Geroulakis testified that he did not remember what the man whom he identified as the defendant was wearing and denied previously describing the man as wearing a long-sleeved black shirt. Geroulakis recalled telling a detective only that "some were wearing black and one was wearing long sleeves." Geroulakis acknowledged that, in 2009, he had testified that the taller man wore a black shirt with long sleeves. A video-still from one of the clubs that the defendant visited in the early morning of the day of the incident revealed that the defendant was wearing a light-colored shirt with horizontal stripes and sleeves to the elbows. In addition, Detective Constantine Papadopoulos testified that the defendant had the same tattoo on his right arm at the time of trial that he had at the lineup, and Detective David Beutel testified that the defendant had tattoos on both of his arms. Geroulakis, however, testified that the arms of the two men who allegedly stabbed Zisimopoulos were bare and that he did not observe any tattoos.
Moreover, Geroulakis's motive to identify the defendant as one of the people who stabbed Zisimopoulos is apparent from his exaggerated testimony at the second trial. It was only at second trial, nine years after the incident, that Geroulakis testified that he had observed the defendant, the taller of the two men, twice: once at the souvlaki stand and once by the car at the time of the stabbings. On cross-examination, however, Geroulakis admitted that, at the first trial, he stated that he recognized only the shorter man from the souvlaki stand, not the defendant. Despite this admission, Geroulakis continued to insist at the second trial that both the defendant and the shorter man were at the souvlaki stand.
Based on the weight of the credible evidence, we find that the jury was not justified [*2]in finding the defendant guilty of manslaughter in the first degree beyond a reasonable doubt (see People v Danielson, 9 NY3d at 348).
In light of our determination, we need not reach the defendant's remaining contentions.
RIVERA, J.P., MALTESE, BARROS and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court